BREAUX, C. J.
Plaintiffs alleged three separate and distinct causes of action, one direct and the other two in the alternative. In the first plaintiffs charged that the act against which they leveled their attack was simulated and fictitious. In the second plaintiffs charged if the transaction whereby the principal defendant claimed ownership of the property under an alleged sale was not a simulation, or if they failed in the attempt to prove that it was a simulated sale, then the sale was a fraud for the purpose of thwarting plaintiffs in their endeavor to collect the amount due them by the vendor, who is the principal defendant, and, lastly, again in the alternative, the issue presented by plaintiff is that the act in question was a fraudulent giving in payment a dation en paiement; that this the principal defendant, the vendee of the property, was a creditor for a large amount; that the vendor to him was completely insolvent, and that, in consequence, plaintiffs would lose their claim if the sale be not annulled; that the dation en paiement was an illegal preference to the prejudice of other creditors, which snould be annulled. And, lastly, the pleadings set up, if the sale was not contracted in bad faith on the part of the vendor and vendee, it was «nterod into in bad faith by the vendor and in good faith by the vendee, that the value of the property exceeds by one-fifth of the price of the sale, and that in consequence plaintiffs have a right to the property on paying the price and interest.
Plaintiffs instituted this act to have the sale hereafter specially referred to annulled as creditors of the vendor. One of these creditors is Advance Thresher Company, in the sum of $773, with interest; the other, the Black Bros. Implement Company, in the sum of $118.80, with interest. Petitioners aver that a't the time that the vendor became indebted for these amounts and up to February, 1910, he was the owner of property situated in the parish of Acadia, consisting of 585 acres, together with buildings and other improvements thereon, wagons, buggies, gang plows, and farming implements.
Plaintiffs as creditors, charge that on the 24th of February, 1910, the vendor sold for an alleged consideration of $12,000 of which $0,000 was represented by the purchaser’s promissory note, and the balance of the purchase price represented by an indebtedness of the vendor to the firm of Caldwell & Smith, which the purchaser assumed.
This sale is directly attacked, and is attacked in the alternative on the different grounds before us. Subsequently the purchaser leased this property to the son of the vendor. The vendor, Chas. I>. McAyeal, as respondent, alleged substantially that the transaction was in due form and for valid consideration.
The other respondent, the purchaser before alluded to S. Locke Breaux, alleged in the first place that the suit should be postponed because another suit had been taken up to the Court of Appeals in some respect involving the same issues as those alleged here and between the same parties. The district court properly overruled this motion, which is only mentioned because evidence taken in that case was introduced in the case before us for decision.
The purchaser, Breaux, then filed his answer, which was a defense substantially as that of his vendee, McAyeal. The former, McAyeal the vendor, remained on the place, but the son Aleck McAyeal, is the lessee.
The facts are substantially as alleged in the petition as before stated. We supplement them with the following facts:
In June, 1907, McAyeal borrowed $6,000 *193 and interest, and secured the amount by mortgage on the places (in controversy). He also owed Breaux $3,000 and interest, for which MeAyeal gave a second mortgage to Breaux. The live stock and the personal property on the place were not included with property mortgaged. On the day of sale, MeAyeal to Breaux, February 24, 1910, in addition to amount due by the former to the creditors above named, MeAyeal owed to the Thresher Company some $800 as before stated, to Black Bros. Implement Company $150.
The record shows that Breaux sold 90 acres of the land to E. J. Jeffers before the present suit was brought against him by the “Advance Thresher Company” and others.
Witnesses testified in regard to the value of the property. A sheriff’s sale of half of the property was introduced to prove value in 1907, the date of the sale, saying that the property at the time of the trial was worth about as much as it was at the date of the sale.
It is argued that the sale in question in this suit was not real, and not binding on creditors, or, in the alternative, that creditors could not be denied all recourse for the securing of their claims.
Statements were reduced to figures, and the foregoing is stated in argument.
Due Caldwell & Smith, principal... $6,000 00
Interest note due January 1, 1910.. 456 00
Interest on above January 1, 1910, to February 24, 1910............ 77 00
S. Locke Breaux, principal........ 8,000 00
Interest ........................ 500 00
Making total consideration of......$10,033 00
Counsel for plaintiffs state:
“We contend that the total value of all the property conveyed to Breaux by MeAyeal February 24, 1910, was reasonably worth $19,550, as follows:
585 acres at $30................ $17,550 00
Personal property............... 2,000 00
$19,550 00
This statement was intended to support plaintiffs’ last alternative demand stated in the first part of this opinion; that is, demand based on the alleged one-fifth value over and above the price.
In addition to this mortgage, the principal defendant in this suit had a mortgage of $3,000 and interest. Besides he claimed to own a claim of $100, the Crowley Furniture Company .claim.
The first proposition is whether this court has jurisdiction. We are not of the opinion that it has. On the face of the record, it did not appear that there had been simulation, whatever other ground of complaint the plaintiff may have had. There was a mortgage and valid consideration at least to the amount of $6,000, and interest. No one has denied the validity of this first mortgage. There was a second mortgage of record, which had consideration at least to the amount of $3,000. One of the mortgages, the first in rank, had been assumed by the purchaser, Breaux, and the other was due him personally. There was another suit between some of the parties in which some of the issues must have been discussed sufficiently for it to appear that, whatever legality there may have been, the transaction was not a simulation.
There was no cause of action on the ground of simulation. By alleging simulation this court was not given jurisdiction in a ’ revocatory action; the amount of the claim being less than $2,000. See Katz v. Gill, 43 La. Ann. 1041, 10 South. 364; Insurance Company v. Court of Appeal, 112 La. 399, 36 South. 472.
We will go one step and consider the question of simulation vel non.
We have not found that there was simulation, or that the transaction, as relates to simulation, was of that character. In order that a contract may be declared a simulation, it must appear that the creditors may proceed as if no transfer has been made— *195 that it is a simulated transfer, casting only a shadow on the title. The present transaction cannot be classed with those pronounced simulated. In addition to the consideration to which we have referred of some $9,000, after the sale attacked in this suit, hut before suit was brought the purchaser sold 90 acres of the land for the price of $2,700. This sale cannot be treated as an absolute nullity whatever may be the rights of the creditors.
Having reached the conclusion that the first sale was not a simulation, we are not of the opinion that we should pass upon the other questions at issue. As to the simulation charged, if it had been well founded, it would have been necessary to decree the return of the whole place, worth a number of thousand dollars. In that case the amounts of the claims of the creditors, considerably less than $2,000, is not the test of jurisdiction, but the value of the property held under an alleged simulated sale.
But, as the action is revocatory in character, whatever right the creditors have must be passed upon by the Circuit Court of Appeal.
The amount due to the complaining creditors is the test of jurisdiction.
The judgment of the district court to the extent that it decides that the action is not en declaration du simulation, that there was no simulation, is affirmed at apiiellant’s costs on appeal. In other respects — that is, to the extent that the transaction was not a simulation — the appeal will he transferred.
It is ordered, adjudged, and. decreed that the appeal be transferred to the Court of Appeal having jurisdiction in appeals from the parish of Acadia, to be proceeded with according to law to the extent that the issues are not of simulation, provided that, before said transfer is made, the appellant or his attorney of record shall make the required oath. If no such oath be made within 10 days from the 14th inst., then the appeal will be considered dismissed as from the date this opinion is handed down.